## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DENISE L. SMITH,**

        **Plaintiff,**

        **v.**

**DENIS R. McDONOUGH, SECRETARY, U.S.
DEPARTMENT OF VETERANS AFFAIRS, et
al.,**

        **Defendants.**

**Case No. 5:22-CV-4072-JAR-RES**

## MEMORANDUM AND ORDER

Plaintiff Denise L. Smith filed this *pro se* action asserting claims under the Rehabilitation Act against Denis R. McDonough, Secretary of the U.S. Department of Veterans Affairs ("VA"), and two Human Resources employees, Patrick Shea and Daniel Karr.  This matter is before the Court on Defendants' Motions to Dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Docs. 20, 23).  The motions are fully briefed and the Court is prepared to rule.  As described more fully below, the Court grants Defendants Shea and Karr's motion to dismiss as uncontested,[1]  and grants Defendant VA's motion to dismiss for failure to state a claim.

## I.      Background

The Court derives the following relevant facts from Plaintiff's Complaint and attached documentation and construes these facts in the light most favorable to Plaintiff.[2]  Specifically,

---

[1] Plaintiff's response acknowledges that Shea and Karr are improper parties to this suit.

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

the Court considers the Separation for Medical Inability Memorandum,[3] the Settlement

Agreement,[4] and Plaintiff's description of events in the ORMDI complaint,[5] all of which are

attached to Plaintiff's Complaint.

Plaintiff suffers from a Traumatic Brain Injury ("TBI").  On June 11, 2020, Plaintiff

submitted documentation from her physicians to her supervisors which stated that she was

unable to return to work due to her disability.  Her supervisors, Keith Blackstone and Shea,

offered to remove her from federal service, stating that it would help to expedite the processing

of her application for disability retirement benefits.  Pursuant to this removal, Plaintiff signed a

Settlement Agreement ("SA") on July 27, 2020.[6]  The SA required Plaintiff to waive her rights to

challenge the separation action.  The SA also imposed on Defendant an obligation to remove

Plaintiff for medical inability no later than August 25, 2020.

Plaintiff's removal was effective on August 17, 2020.  However, Plaintiff soon realized

that she could not apply for disability retirement benefits until Defendant issued her a Standard

Form 50 ("SF-50").  After months of requests, Defendant issued Plaintiff a SF-50 on November

23, 2020, but the form was incorrect.  Plaintiff did not immediately submit the form because she

did not want to submit incorrect paperwork.  Over the next several months, Plaintiff tried to get

her superiors to fix the mistakes, but they would not issue her a corrected form.

On February 2, 2021, Plaintiff first raised the possibility with Shea that the delay in

issuing her a correct form was due to disability discrimination.  After Plaintiff raised the issue of

discrimination, her former co-workers began to act differently towards her.  When employed,

---

[3] Doc. 1-3 at 8, 9.

[4] Doc. 1-4 at 15–17.

[5] Doc. 1-3 at 5–7

[6] Doc. 1-4 at 15–17.

Plaintiff was a model employee who was promoted frequently and received high performance reviews.  However, after reporting the discrimination, Shea referred to Plaintiff as "mentally unstable" and "fixated on Mr. Karr."[7]  Plaintiff told Shea and Karr many times that the delay in issuing her the proper paperwork, and the resulting stress, was worsening her disability.  Yet, they continued to either ignore her requests for help or lie to her about the progress of her SF-50.

On March 9, 2021, Plaintiff initiated informal counseling with an Equal Employment Opportunity ("EEO") officer.  On April 30, 2021, Plaintiff filed a formal equal employment opportunity complaint with the Office of Resolution Management, Diversity & Inclusion ("ORMDI") asserting claims for disability discrimination and retaliation/ hostile work environment.  ORMDI dismissed her claims as "like or related" to the settlement agreement because the SA imposed on her an obligation to apply for disability retirement, which she had not done at the time when she filed the complaint.  Thus, ORMDI construed her claims as requests to force Defendant to perform under the SA, which would then allow Plaintiff to fulfill her obligation to submit a completed application for disability retirement.

After ORMDI declined to investigate her complaint, Plaintiff appealed the decision to the Equal Employment Opportunity Commission ("EEOC").  The EEOC affirmed ORMDI's findings and denied her claims on September 30, 2022.  At some point during this period, Plaintiff decided to submit the incorrect SF-50, with an explanation of the inaccuracies, to initiate the process of receiving benefits.  Soon after she submitted the form, she received severance checks.  Plaintiff continued to try to correct the SF-50 during this time because she believed that her severance amount was calculated incorrectly.  Finally, having exhausted her administrative remedies, Plaintiff filed this action on December 29, 2022.

---

[7] Doc. 1-3 at 5.

## II.    Legal Standards

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[8]  A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[9]  The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[10]  Mere conclusory allegations of jurisdiction are not enough.[11]

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim where the plaintiff has failed "to state a claim upon which relief can be granted."  To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]  When evaluating a 12(b)(6) motion to dismiss, the court must accept all facts well-pleaded by the non-moving party as true and must grant all reasonable inferences in favor of the non-moving party.[14]  For the court to deny this motion, a plaintiff must state a plausible claim, which requires factual

---

[8] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.").

[9] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

[10] *Montoya*, 296 F.3d at 955.

[11] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14] *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

allegations that "raise a right to relief above the speculative level."[15]  Legal conclusions couched as factual allegations are not accepted as facts by the court.[16]

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis.  The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[17]  Thus, if a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements."[18]  However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[19]  For that reason, the Court will not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[20] nor will it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[21]  The Court need only accept as true the plaintiff's "well-pleaded factual contentions, not [her] conclusory allegations."[22]

---

[15] *Twombly*, 550 U.S. at 555.

[16] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[17] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citation omitted).

[18] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[19] *Id.*

[20] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted).

[21] *Whitney*, 113 F.3d at 1173-74.

[22] *Hall*, 935 F.2d at 1110 (citation omitted).

## III.     Discussion

Defendant VA moves to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.  The Court denies Defendant's motion to dismiss for lack of subject matter jurisdiction but grants its motion to dismiss for failure to state a claim.

### A.        Subject Matter Jurisdiction

The Court liberally construes Plaintiff's Complaint as asserting federal question jurisdiction under 28 U.S.C. § 1331 because her claims arise under the Rehabilitation Act.[23] However, Defendant contends that Plaintiff's claims are not about discrimination and do not arise under the Rehabilitation Act, but rather are contract claims to enforce her SA.  Defendant argues that the federal government has not waived sovereign immunity over such claims and Plaintiff must follow the procedure outlined in 29 C.F.R. § 1614.504(a) to resolve her SA dispute.  Plaintiff responds that her suit is not about Defendant's obligations under the SA, but rather the discriminatory way Defendant treated her during the period in which she attempted to obtain her paperwork.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent."[24]  "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."[25]  The issue here is how Plaintiff's claims are construed.  If Plaintiff's claims are for discrimination and retaliation under the Rehabilitation Act, then they can proceed because the government has waived sovereign immunity for such

---

[23] Doc. 25 at 1.

[24] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

[25] *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).

claims.[26]  But if Plaintiff's claims are construed as breach of contract claims, then Plaintiff is limited to the procedure set forth in § 1614.504(a) because the government has not waived its sovereign immunity for claims involving settlement agreements that resolve discrimination complaints.  Based on its analysis below, the Court finds that Plaintiff's claims should not be construed as contract claims because § 1614.504(a) does not apply.  Therefore, the Court has subject matter jurisdiction over this suit.

Section 1614.504(a) provides limited remedies for federal employees who assert that the government breached their settlement agreement, and does not provide for civil suit.  However, the regulation applies to settlement agreements that resolve discrimination claims.  This is clear from the regulation's language and the remedies that it offers: "[a]ny settlement agreement knowingly and voluntarily agreed to by the parties, *reached at any stage of the complaint process*, shall be binding on both parties."[27]  The complainant may request one of two remedies: "that the terms of [the] settlement agreement be specifically implemented, or, alternatively, *that the complaint be reinstated for further processing* from the point processing ceased."[28]  This language makes clear that the regulation does not govern all settlement agreements, but rather settlement agreements reached as a result of a discrimination complaint.  In fact, in section (c) of the regulation, it expressly provides that "[a]llegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints."[29]

---

[26] *See McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004) (noting that the Rehabilitation Act "makes available a private right of action to qualified individuals who have been subjected to discrimination by the federal government or by a program or activity receiving federal financial assistance." (citations omitted)).

[27] 29 C.F.R. § 1614.504(a) (emphasis added); *see NRDC v. McCarthy*, 993 F.3d 1243, 1251 (10th Cir. 2021) (as in statutory interpretation, "[w]hen interpreting regulations, 'we begin our analysis by examining the plain language of the text of the regulation, giving the words their ordinary meaning.'") (quoting *Bd. of Educ. of Gallup-McKinley Cnty. Schs. v. Native Am. Disability Law Ctr., Inc.*, 959 F.3d 1011, 1013 (10th Cir. 2020)).

[28] 29 C.F.R. § 1614.504(a) (emphasis added).

[29] 29 C.F.R. § 1614.504(c).

Plaintiff's SA was not reached through the discrimination complaint process, as Plaintiff had not experienced any discrimination at the time she entered into the agreement.  Importantly, neither remedy under § 1614.504(a) could provide Plaintiff with relief for her discrimination claims.  There is no underlying complaint that can be reinstated, and there is no specific performance that could be ordered.[30]  This is because Plaintiff's SA has nothing to do with discrimination.

Every case that Defendant cites to support its argument that Plaintiff's claims are controlled by § 1614.504(a) centers around a settlement agreement reached after an initial discrimination complaint.[31]  Each of these cases found that § 1614.504(a) applies to settlement agreements reached after initial discrimination complaints.[32]

The EEOC provided the limited remedies in § 1614.504(a) for employees who already had the chance to settle their discrimination claims.  To interpret the statute to foreclose suit on discrimination claims which arise after an entirely distinct settlement agreement (here, an

---

[30] The only obligation in the SA that Defendant agreed to undertake was to remove Plaintiff for medical inability by August 25, 2020.  Defendant did remove her.  There is no remaining performance that the Court could order to resolve Plaintiff's claims. *See* Doc. 1-4 at 15–17.

[31] *See Lindstrom v. United States*, 510 F.3d 1191, 1192 (10th Cir. 2007) (explaining that plaintiff made a disability discrimination complaint against the Department of the Interior, the parties later "reached a settlement . . . and entered into an agreement that [plaintiff] now claims has been breached."); *Stokes v. McDonough*, 21-cv-00143, 2022 WL 1135758, at *1 (D. Utah Apr. 18, 2022) (explaining that plaintiff made a discrimination complaint against the VA, later "entered into a written settlement agreement . . . to resolve the informal EEO complaint," and sued for breach of contract when the VA failed to adhere to its obligations); *Frahm v. United States*, 492 F.3d 258, 260–61 (4th Cir. 2007) (explaining that plaintiff filed a claim of employment discrimination against the IRS, "resolved the discrimination claim through the execution of a settlement agreement," and later sued for breach of the agreement).

[32] *See, e.g., Lindstrom*, 510 F.3d at 1194 ("Under 29 C.F.R. § 1614.504(a), a federal sector employee-complainant is limited in his remedies when he alleges a breach of a Title VII agreement by a government agency."); *Stokes*, 2022 WL 1135758, at *4 (discussing 29 C.F.R. § 1614.504(a), "[w]hen federal sector employees sue for alleged breaches of Title VII agreements by a government agency, there is a procedure to claim a breach of an agreement."); *Frahm*, 492 F.3d at 262 (discussing 29 C.F.R. § 1614.504(a), "the government has specifically limited by regulation the forms of relief a plaintiff may seek when she alleges breach of a Title VII settlement agreement by a government agency.").

agreement to remove Plaintiff for medical inability), would impermissibly damage the federal government's ongoing goal to be "a model employer."[33]

The fact that Plaintiff's discrimination claim arose in the context of her attempt to secure retirement benefits does not preclude her from bringing suit for discrimination that she claims began after the SA was executed.  She had no prior opportunity to raise her discrimination claims because they did not accrue until months after she was removed from service.  Thus, § 1614.504(a) is inapplicable and does not bar this suit.  Therefore, the Court denies Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

### B.  Failure to State a Claim

Plaintiff makes two claims under the Rehabilitation Act: (1) disability discrimination, and (2) retaliation.  While Plaintiff need not plead the elements of the prima facie cases, the elements are relevant in analyzing whether she has stated sufficient facts to permit a reasonable inference that Defendant is liable for the misconduct alleged.[34]  Based on its analysis below, the Court finds that Plaintiff has failed to state a plausible claim for relief.

First, Plaintiff fails to allege facts that could support a prima facie case for disability discrimination.  Under § 501 of the Rehabilitation Act, Plaintiff must show that (1) she is a disabled person within the meaning of the Act, (2) she is otherwise qualified for the job, and (3) she was discriminated against because of her disability.[35]  Plaintiff concedes that she was not capable of performing the duties of her job, both in her pleadings and in her supporting

---

[33] 29 C.F.R. § 1614.203(c); *Moore v. Walker*, 24 F. App'x 924, No. 01-1073, 2001 WL 1564035, at *2 (10th Cir. Dec. 10, 2001) (noting that, within the EEOC regulations implementing the Rehabilitation Act, there is "a provision stating that the federal government is to be a model employer of individuals with disabilities.").

[34] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.") (citations omitted).

[35] *Fox v. Nicholson*, 304 F. App'x 728, 730 (10th Cir. 2008).

documentation.[36]  Therefore, Plaintiff cannot satisfy the prima facie case, which requires her to show that she is "otherwise qualified for the job."[37]  Accordingly, Plaintiff fails to state a claim for disability discrimination.

Second, Plaintiff has not alleged sufficient factual matter to permit the Court to find that her retaliation claim rises above the speculative level.  Under the prima facie case for retaliation, Plaintiff must show that (1) she engaged in activity protected under the Act, (2) she suffered a materially adverse action subsequent to or contemporaneous with the protected activity, and (3) there is a causal connection between the protected activity and the adverse action.[38]  Defendant does not dispute that Plaintiff engaged in protected activity by reporting discrimination to her former superior.  Defendant does dispute that Plaintiff suffered a materially adverse action.

The Court liberally construes Plaintiff's Complaint as alleging two materially adverse actions: (1) negative comments directed to her by Shea, and (2) the delay in issuing her retirement benefits.  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."[39]  In other words, Plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[40]  Defendant characterizes the negative comments made by Mr. Shea[41]

---

[36] *See* Doc. 1-3 at 5, 8; Doc. 1-4 at 16.

[37] *See Fox*, 304 F. App'x at 730.

[38] *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).

[39] *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006).

[40] *Id.* at 68 (internal quotation marks and citation omitted).

[41] Shea allegedly stated that Plaintiff was "mentally unstable" and "fixated on Mr. Karr." Doc. 1-3 at 5.

as "petty slights or minor annoyances."[42]  Plaintiff characterizes the comments as devastating and claims that she was so affected by them that her disability was worsened.

The Court is mindful that context matters.  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."[43]  Yet the focus of the material adversity inquiry is whether the alleged adverse actions would be likely to dissuade a reasonable worker from reporting discrimination.[44]  The Court finds that these comments simply do not rise to the level of materially adverse.

Plaintiff characterizes her main injury as Defendant's delay in issuing her retirement benefits.  This injury is what prompted her to sue.  The Supreme Court has held that going without pay for a month can constitute a materially adverse action.[45]  Similarly, going without expected retirement benefits could also constitute a materially adverse action.  But even if Plaintiff could make a plausible claim that the delay was materially adverse, she fails to assert sufficient factual matter on the third prong of the prima facie case—causation.

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[46]  Plaintiff does not assert any facts that suggest the delay in issuing her benefits was caused by her decision to report potential discrimination to her former boss.  In fact, it was the other way

---

[42] *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 67 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

[43] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998).

[44] *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68.

[45] *Id.* at 72 ("Many reasonable employees would find a month without a paycheck to be a serious hardship.").

[46] *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1134 (10th Cir. 2010) (internal quotation omitted).

around.  Plaintiff initially suspected that she was being discriminated against *because of* the delay.  Therefore, even if Plaintiff could show that she suffered a materially adverse employment action, she cannot show that it was caused by her decision to report potential discrimination.

While the Court liberally construes Plaintiff's *pro se* Complaint, it will not add factual allegations to round out her legal theories.[47]  Based on the limited facts pled in her Complaint, Plaintiff has failed to state a Rehabilitation Act claim upon which relief may be granted.  Therefore, this Case is dismissed in its entirety with prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Shea and Karr's Motion to Dismiss (Doc. 20) under Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim is **granted**.  Defendant VA's Motion to Dismiss (Doc. 23) under Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim is **granted** under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  This case is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

Dated: October 16, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[47] *See Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997).